Thor S. SVEGE, Jr., a minor, by his grandmother and Guardian Alice G. Svege; Briana Lee Svege, a minor, by her grandmother and Guardian Alice G. Svege; and the Estate of Thor S. Svege, Sr., Deceased, by Alice G. Svege, Administratrix, Appellants,

v.

INTERSTATE SAFETY SERVICE, INC., Stabler Construction Co.—JV–Eastern Industries, Inc., Stabler Construction Co., Eastern Industries, Inc., Commonwealth of Pennsylvania Turnpike Commission, Hensley Industries, Inc., t/a Four H Trucking Co., and Scottie W. Wightman.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 2, 2004.

Decided Dec. 7, 2004.

Leo Gilberg, New York, NY, for appellants.

Thomas F. Brogan, Pittsburgh, for appellee, PA Turnpike Commission.

Paul C. Troy, Norristown, for appellee, Interstate Safety Services, Inc.

Kimberly A. Boyer, Philadelphia, for appellee, Stabler Construction Co., JV Stabler Construction Co. and Eastern Industries, Inc.

BEFORE: LEADBETTER, J., and LEAVITT, J., and KELLEY, Senior Judge.

OPINION BY Judge LEAVITT.

Thor S. Svege, Jr. and Briana Lee Svege, minors, their grandmother and guardian, Alice G. Svege, and the Estate of Thor S. Svege, Sr. (collectively Appellants), appeal from an order of the Court of Common Pleas of Chester County (trial court) granting summary judgment to the Pennsylvania Turnpike Commission (Commission), Stabler Construction Co.–JV– Eastern Industries, Inc., Eastern Industries (Stabler) and Interstate Safety Services, Inc. (Interstate). The trial court concluded that Appellants' claims against the Commission were barred by sovereign immunity and their claims filed against Stabler and Interstate were barred by the so-called "government contractor defense."

This matter arises from a motor vehicle accident that occurred on the Pennsylvania Turnpike (Turnpike) on the morning of September 16, 1999. Three members of the Svege family were killed and three were seriously injured when their family vehicle was crushed by an oncoming tractor trailer. The truck crashed through the 32–inch concrete "safety shape" barriers

separating eastbound and westbound traffic on the Turnpike, caught on fire and landed on the Svege vehicle. As a result of the tragic devastation to the Svege family,[1] Appellants commenced a civil action. They sought to recover damages under a theory of negligence and strict liability.[2]

Their Complaint alleged that the Commission was negligent in the design, construction and maintenance of the Turnpike resulting in a dangerous condition that substantially contributed to the fatal crash. The Complaint also alleged that Stabler, general contractor to the Commission,[3] and Interstate, a manufacturer of precast concrete barriers, were each negligent in the production and installation of the 32– inch pre-cast concrete "safety shape" median barriers that separated the eastbound and westbound lanes of the Turnpike where the fatal accident occurred. Defects in these concrete barriers, the Complaint alleged, made them "incapable of performing as intended," and "unfit for the intended purpose." Amended Complaint at ¶ 22(a) and (b). The Complaint also alleged that Stabler and Interstate knew that a 32–inch concrete safety median barrier would substantially increase the risk of cross-over crashes as compared to a 46– inch high reinforced barrier. Amended Complaint at ¶ 30.[4]

1. Thor Svege, Sr. and his wife, Aileen, were killed as was Mrs. Svege's mother, Jerilyn Dyer. The two children and their maternal grandfather survived.

2. Thor Jr. and Briana sought damages described as all those "lawfully available" on account of their injuries and economic loss resulting from the accident, including the deaths of their parents and maternal grandmother. The Estate brought the action sounding in survival and wrongful death.

3. The work was done under Contract No. 6902–86–628 for Bituminous Overlay, Shoulder Reconstruction and Bridge Repair on the Pennsylvania Turnpike performed ten years prior to the accident.

4. The Amended Complaint also sought damages from the Crisdel Group, Inc. and Frank Criscola (Crisdel) and Susan Colombo. The trial court dismissed with prejudice all claims against Susan Colombo and amended the caption of the case to reflect that Crisdel, Frank Criscola and Susan Colombo were no longer parties to the action. These issues are not before the Court.

Appellants filed separate actions in the State of Connecticut against the truck driver, his employer, the tractor manufacturer, and the owner of the trailer. That litigation has been settled.

After disposition of preliminary objections and completion of discovery by the parties, motions for summary judgment were filed by the Commission, Stabler and Interstate. The Commission sought judgment in its favor on the basis of sovereign immunity. It also contended that the facts developed by Appellants did not make out a *prima facie* product liability claim or otherwise support any theory by which to impose liability on the Commission. Stabler and Interstate sought judgment on the basis of the so-called "government contractor defense." *See Ference v. Booth and Flinn Co.,* 370 Pa. 400, 88 A.2d 413 (1952) and *Valley Forge Gardens, Inc. v. James D. Morrissey, Inc.,* 385 Pa. 477, 123 A.2d 888 (1956). Stabler and Interstate asserted that they could not be held liable in damages because they performed their contract to install the median barriers in accordance with the Commission's contract specifications, thereby entitling them to the government contractor defense.

The Commission, Interstate and Stabler also filed motions *in limine* with respect to Appellants' expert, Maurice E. Bronstadt, P.E. The Commission argued that it was, and still is, required to use median barriers approved by the Pennsylvania Department of Transportation (PennDOT). PennDOT's RC–57 Standard for Concrete Median Barriers established detailed specifications for median barrier height, maximum length, thickness, internal reinforcement, concrete strength, method of joinder and hardware for joinder. These specifications were followed by the Commission and its contractors when the barriers in question were installed. Mr. Bronstadt opined that the 32–inch barriers were defective and inadequate to prevent the accident that devastated the Svege family. He reached this conclusion by comparing PennDOT's standards to those of the American Association of State Highways and Transportation Officials that were adopted in 1998, long *after* the barriers in question were installed on the Turnpike.[5] The motions *in limine* sought to exclude Mr. Bronstadt's report and his testimony from trial.

After briefing, oral argument and consideration of a voluminous record, the trial court granted the Commission's motions for summary judgment on January 13, 2003, and that of Stabler and Interstate on January 26, 2004. The trial court did not decide the motions *in limine* with respect to Mr. Bronstadt for the reason that the motions had been mooted by the court's grant of summary judgment.

The trial court held that Appellant's claim against the Commission was barred by the doctrine of sovereign immunity. Appellants attempted to show that they were entitled to the real estate exception to sovereign immunity.[6] However, relying upon our Supreme Court's decision

---

5. At the time the 32–inch high median barriers were installed on the Turnpike, they were the most widely used barriers in the United States. They continue to remain in use in the vast majority of states, including the Commonwealth.

6. 42 Pa.C.S. § 8522 waives sovereign immunity for certain actions of the Commonwealth, thereby allowing the Commonwealth to be liable in damages. It states, in relevant part, as follows:

   (b) **Acts which may impose liability.—**

The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised in claims for damages caused by:

\* \* \*

**(4) Commonwealth real estate, highways and sidewalks.—**

   A dangerous condition of Commonwealth agency real estate and ... highways under the jurisdiction of a Commonwealth agency....

42 Pa.C.S. § 8522(b)(4).

in *Dean v. Department of Transportation*, 561 Pa. 503, 751 A.2d 1130 (2000), the trial court held that the placement of 32-inch concrete barriers could not give rise to liability even if a taller barrier would have been a more effective device.[7] In *Dean*, the absence of any barrier was held not to render a highway unsafe for its intended purpose of travel. Accordingly, Appellants' claim that a hypothetical barrier of greater dimensions and stability could have minimized or eliminated their injuries was inadequate as a matter of law to hold the sovereign liable under the real estate exception.

■ With respect to Stabler and Interstate, the trial court found that there was no dispute that the concrete median barrier in question was manufactured and installed according to Commission contract specifications, not the specifications of Stabler or Interstate. Further, Appellants did not allege that Stabler or Interstate were negligent in performing their duties under the contract or that they had violated the contract specifications. The trial court therefore granted summary judgment to Stabler and Interstate under the "general contractor defense." This defense was enunciated in *Ference* as follows:

> It is hornbook law that the immunity from suit of the sovereign state does not extend to independent contractors doing work for the state. But it is equally true that where a contractor performs his work in accordance with the plans and specifications and is guilty of neither a negligent nor a willful tort, he is not liable for any damage that might result.

370 Pa. at 403, 88 A.2d at 414 (citation omitted).

On appeal, Appellants present three issues for our consideration. First, they argue that the trial court erred in holding that Appellants did not meet the real estate exception to sovereign immunity, thereby rendering the Commission liable. Second, they contend that the trial court erred in concluding that the evidence did not support Appellants' claims of negligence and strict liability as to Stabler and Interstate. Third, they argue that the trial court erred in excluding the report of its expert.

After a review of the record, the trial court's findings and conclusions of law, we conclude that the trial court thoroughly, ably and correctly disposed of the issues raised by Appellants before this Court. Accordingly, we affirm on the basis of the Honorable William P. Mahon's opinion set forth at *Thor S. Svege, Jr., et al. v. Crisdel Group, Inc., et al.*, No. 01–07605 (Court of Common Pleas of Chester County, filed April 28, 2004).

## ORDER

AND NOW, this 7th day of December, 2004, the order of the Court of Common Pleas of Chester County is affirmed. This Court hereby adopts the analysis in the Honorable William P. Mahon's opinion for the purposes of appellate review and affirms the trial court's order on the basis of the opinion issued in *Thor S. Svege, Jr., et al. v. Crisdel Group, Inc., et al.*, No. 01–

---

7. In *Dean*, the Supreme Court found that the absence of a guardrail could not be said to be a dangerous condition of the real estate that resulted in a reasonably foreseeable injury to the appellee. The Court held that the lack of a guardrail did not render the highway unsafe for the purposes for which it was intended, *i.e.*, travel on the highway. In narrowly construing the statute, it concluded that the legislature did not intend to impose liability upon the government whenever a plaintiff alleged that his injuries could have been avoided or minimized, had the government installed a guardrail.

07605 (Court of Common Pleas of Chester
County, filed April 28, 2004).